# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Joshua Lamar Reed,<br><br>Defendant. | Case No. 18-CR-00143(1) (SRN/DTS)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Andrew S. Dunne and Craig R. Baune, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, for the Government.

Joshua Lamar Reed, USP McCreary, P.O. Box 3000, Pine Knot, Kentucky 42635, Pro Se Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Joshua Lamar Reed's pro se Motions for Compassionate Release from Custody ("Def.'s Release Mot.") [Doc. No. 134] and to Reconsider Compassionate Release and Reconstrue Request ("Def.'s Reconsideration Mot.") [Doc. No. 139]. Mr. Reed seeks compassionate release from his term of imprisonment, arguing that he is incarcerated in an isolating and dangerous prison environment, the Federal Bureau of Prison ("BOP") has failed to place him in a halfway house, and family-related concerns mandate his release. (Def.'s Release Mot. at 1–2.) The Government opposes Mr. Reed's Release Motion ("Gov't's Opp'n") [Doc. No. 138]. Based on a review of the file, record, and proceedings herein, and for the following reasons, the

1

Court grants in part and denies in part Mr. Reed's Reconsideration Motion,[1] and denies with prejudice Mr. Reed's Release Motion.

I.   BACKGROUND

In May 2019, Mr. Reed pleaded guilty to one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) after law enforcement recovered a firearm during Mr. Reed's arrest for a parole violation. (Plea Agmt. [Doc. No. 81] ¶¶ 1–2.) On December 19, 2019, the Court sentenced Mr. Reed to a 70-month term of imprisonment for his offense (*see* Sentencing J. [Doc. No. 112] at 2), which he is currently serving at the United States Penitentiary in McCreary County, Kentucky ("USP McCreary"), (*see* Def.'s Release Mot. at 1). He has a projected release date of October 1, 2023. *See* BOP, *Find an inmate*, https://www.bop.gov/inmateloc/ (last accessed Mar. 1, 2023).

Mr. Reed seeks compassionate release on three grounds. First, he argues that he has been serving his sentence under challenging conditions due to a combination of the BOP's COVID-19-related policies and violent altercations in his prison environment. (Def.'s Release Mot. at 1; Def.'s Reconsideration Mot. at 2.) Second, he contends that the BOP

---

[1] Mr. Reed asks the Court in his Reconsideration Motion to construe his earlier "personal letter" requesting compassionate release at Docket Number 134 as a motion and to overlook that he is "without counsel []or proper knowledge of the law[.]" (Def.'s Reconsideration Mot. at 1.) Construing his pro se filings liberally, *see United States v. Sellner*, 773 F.3d 927, 932 (8th Cir. 2014) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)), the Court grants in part his Reconsideration Motion and construes his letter filed at Docket Number 134 as a Motion for Compassionate Release from Custody. The remainder of his Reconsideration Motion restates the same arguments raised in his Release Motion and is therefore denied for the same reasons that his Release Motion is denied.

2

should have already placed him in a "re-entry halfway house or . . . on home confinement." (Def.'s Release Mot. at 1; Def.'s Reconsideration Mot. at 2.) And finally, he asserts that his mother has been diagnosed with stage three cancer and that he alone is able to meet her caregiving needs, provided that he is released. (Def.'s Release Mot. at 2; Def.'s Reconsideration Mot. at 2.) Mr. Reed also argues that his Motion is properly before the Court because he asked USP McCreary's warden for compassionate release, received no reply, and confirmed with the warden that "[he] ha[s] exhausted [his] remedy process" with the BOP. (Def.'s Reconsideration Mot. at 1.) As relief, he contends that he "meet[s] the criteria for a sentence reduction or [i]mmediate release" and asks the Court to "make a[] recommendation to get [him] home either into a halfway house or home confinement." (*Id.* at 3; Def.'s Release Mot. at 2.)

The Government opposes Mr. Reed's Motion on five grounds. First, the Government argues that Mr. Reed has not met his burden to demonstrate the administrative exhaustion of his claim with the BOP, nor can the Government locate proof that he made any compassionate release request to USP McCreary's warden. (Gov't's Opp'n at 7–10.) Second, it contends that he has failed to demonstrate any extraordinary and compelling reasons warranting compassionate release because "the health of aging parents [is not] a reason for early release[,]" nor does Mr. Reed present evidence confirming his mother's diagnosis or showing that he is her only available caregiver. (*Id.* at 10–11 (citations omitted).) Third, the Government claims that Mr. Reed would be a danger to the safety of the community if released. (*Id.* at 12–14.) Fourth, the Government argues that the sentencing factors under 18 U.S.C. § 3553(a) weigh against Mr. Reed's release. (*Id.* at 14–

3

15.) And fifth, the Government contends that the Court does not have the authority to grant Mr. Reed's requested relief of placement in a halfway house or in home confinement, which are housing decisions committed solely to BOP discretion. (*Id.* at 15–17.)

## II.  DISCUSSION

The First Step Act allows courts to modify a term of imprisonment where "extraordinary and compelling reasons" exist. *See* 18 U.S.C. § 3582(c)(1)(A); *see also* U.S.S.G. § 1B1.13, cmt. n.1(A)–(C) (providing persuasive guidance to courts in analyzing claims under § 3582(c)); *see also United States v. Logan*, 532 F. Supp. 3d 725, 729 (D. Minn. 2021) (explaining that courts should "treat[] § 1B1.13 as providing useful guidance about how to exercise its discretion under § 3582(c)(1)(A), but not as binding.") (citing *United States v. Robinson*, No. 19-CR-0143 (PJS/BRT), 2021 WL 528002, at *2 (D. Minn. Feb. 12, 2021)). Numerous district courts, including in this district, have found that three issues must be considered when evaluating a defendant's motion seeking compassionate release:

> (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community."

*United States v. Arafat*, No. 12-CR-0045 (SRN/JJG), 2021 WL 3721849, at *5 (D. Minn. Aug. 23, 2021) (quoting *United States v. White*, No. 13-CR-20653(1) (MFL), 2020 WL 2557077, at *4 (E.D. Mich. May 20, 2020)); *see also United States v. Edison*, No. 12-CR-225 (DWF/FLN), 2020 WL 3871447, at *2 (D. Minn. July 9, 2020). A defendant seeking compassionate release "bears the burden to establish he is eligible for a sentence

4

reduction." *United States v. Demikh*, No. 15-CR-1132 (MJD/HB), 2022 WL 2643903, at *1 (D. Minn. July 8, 2022) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) and *United States v. Ocanas*, 516 F. Supp. 3d 936, 938 (D. Minn. Feb. 2, 2021)).

### A.   Administrative Exhaustion

As an initial matter, Mr. Reed bears the burden of demonstrating that he brings his Motion only after first exhausting his administrative remedies with the BOP—either through a direct denial of his request for compassionate release, or by the lapse of 30 days without a reply. *See* 18 U.S.C. § 3582(c)(1)(A). Other than Mr. Reed's subjective attestations that "on 11-7-2022 [he] wrote to the warden . . . requesting compassionate release via [e]lectronic email," and that "under the penalty of perjury" his account of events is truthful, there is no corroborating evidence in the record demonstrating that he has exhausted his administrative remedies with the BOP. (*See* Def.'s Reconsideration Mot. at 1, 3.) Moreover, the Government argues that, when it searched for a record of any such administrative request, it could not locate one. (Gov't's Opp'n at 7–8.)

While the Court liberally construes pro se filings, *see Sellner*, 773 F.3d at 932 (citing *Erickson*, 551 U.S. at 94), a pro se movant must still comply with the applicable statutory requirements underlying their § 3582(c) motion, and must offer evidence of such compliance sufficient to meet their burden of proof. *See Ocanas*, 516 F.Supp. 3d at 938 n.2 (finding that initially "there was no evidence in the record demonstrating that Ocanas had exhausted his administrative rights" but that he later "provided evidence that he petitioned the warden for compassionate release" without reply and that, "[t]herefore, the motion [was] properly before the Court."). Here, the Court cannot satisfy itself that Mr. Reed has

met his burden on the matter of administrative exhaustion on the record before it. Therefore, the Court denies his Release Motion for failure to exhaust his administrative remedies.

      B.      **Extraordinary and Compelling Reasons**

Even if Mr. Reed had met his burden to demonstrate administrative exhaustion, his Motion would still fail on the merits. Under § 1B1.13's guidance, age, medical conditions, or family circumstances may constitute extraordinary and compelling reasons for granting a defendant's compassionate release request. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). Mr. Reed is 29 years old and does not assert age-related concerns. *See* BOP, *Find an Inmate*, *supra*. He also does not assert any medical condition puts him at greater risk should he contract COVID-19. He does, however, assert that his mother's acute illness—"stage 3 cancer" treated by chemotherapy—requires caregiving that only he can provide. (Def.'s Release Mot. at 2; Def.'s Reconsideration Mot. at 2.)

A defendant's family circumstances, in narrow instances, may justify compassionate release. The policy statement provides that a reduction is warranted by the "death or incapacitation of the caregiver" of defendant's "minor children" or the "incapacitation of the defendant's spouse or registered partner" when the defendant would be the only available caregiver for that spouse or partner. U.S.S.G. § 1B1.13 cmt. n.1(C); *Arafat*, 2020 WL 3790727, at *7 (denying compassionate release, in part, because the defendant did not assert that he was the only available caretaker for a minor child or spouse); *United States v. Mount*, No. 16-CR-237 (SRN/BRT), 2020 WL 3998888, at *5 (D. Minn. July 15, 2020) (same).

6

While the Court is sympathetic to Mr. Reed's concerns about his mother's health, he does not support his arguments with evidence beyond his subjective account. Moreover, even if Mr. Reed had presented objective evidence of his mother's diagnosis and her caregiving needs, these circumstances would not fall within the contemplated scope of § 1B1.13. Specifically, Mr. Reed does not seek release because he is the only available person to care for a minor child or spouse. *See* U.S.S.G. § 1B1.13 cmt. n.1(C). The Court therefore finds that he has not demonstrated that his family circumstances warrant compassionate release.

In addition to age, health, and family concerns, the policy statement in § 1B1.13 also provides a catch-all provision allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories."[2] *United States v. Walker*, No. 16-CR-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13). Mr. Reed alleges two such "other" extraordinary and compelling reasons in his Motion.

---

[2] Although the Commission's policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Riles*, No. 13-CR-92 (PAM/LIB), 2021 WL 2328436, at *1 (D. Minn. June 8, 2021) (collecting cases and finding that "this application note does not restrict consideration of other factors"); *United States v. Ramirez*, 459 F. Supp. 3d 333, 336–37 (D. Mass. May 12, 2020) (same); *see also United States v. Jennings*, No. 17-CR-0264 (DWF/KMM), 2021 WL 827016, at *2 n.6 (D. Minn. Mar. 4, 2021) (quoting *United States v. Brown*, 457 F. Supp. 3d 691, 701 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it")).

He first argues that the conditions of his prison life have been extremely challenging in several ways, noting that "shortly after [his] arrival to the BOP system" the COVID-19 pandemic began and "[he] was locked in [his] cell 23 hours a day" without access to "programming[,] . . . classes[,] . . . or . . . a work detail." (Def.'s Release Mot. at 1.) Currently, he states that he is "being housed in the special housing unit at U.S.P. McCreary confined to [his] cell 23 hours a day due to an attempt on [his] life where [he] suffered 8 stab wounds in the head and neck area while dining in the chow hall." (Def.'s Reconsideration Mot. at 2.) He argues that this is illustrative of the reality that the "FBOP penitentiary's [sic] are known to be violent and dangerous settings . . . where inmate on inmate [violence], stabbings, beatings and even murder [are] a recurring thing[,]" and that such circumstances warrant his compassionate release. (*Id.*)

While the Court does not diminish the seriousness of the impacts of isolation and violence in the prison environment, courts have repeatedly held that when a concern broadly impacts the prison population of a facility, it is not the type of individualized, extraordinary, and compelling reason that warrants compassionate release. *See, e.g.*, *United States v. Kingbird*, No. CR-CR 00541 (SRN/LIB), 2023 WL 136599, at *3 (D. Minn. Jan. 9, 2023) (citing *United States v. Muhlenhardt*, No. 14-CR-162 (SRN/JJK), 2020 WL 4697112, at *3 (D. Minn. Aug. 13, 2020) (stating that generalized fears shared by all prisoners about the prison environment in light of COVID-19 do not warrant compassionate release); *United States v. Fiterz*, No. 8:10-CR-203 (BCB), 2022 WL 195646, at *2 (D. Neb. Jan. 21, 2022) (same). Therefore, the Court finds that Mr. Reed's

8

allegations about the isolated and violent environment in USP McCreary do not provide an extraordinary and compelling reason for compassionate release.

Mr. Reed next faults the BOP for its failure to place him in a halfway house. Specifically, he alleges that "he was suppose[d] to get put in for [his] halfway house 17–19 months before [his] projected release Date" and "[was] also eligible for the second chance act which [could] get [him] up to 12 months [in a] halfway house[.]" (Def.'s Release Mot. at 1.) He also contends that "[he] ha[s] 740 program days credited towards the First Step act and [he] ha[s] 240 federal time credits (FTC)[3] that [USP McCreary] refuses to let [him] apply[.]" (Def.'s Reconsideration Mot. at 2.)[4]

As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act

---

[3] To the extent that Mr. Reed seeks a court order requiring that the BOP properly apply his Federal Time Credits ("FTC"), a motion for compassionate release is not the correct procedural vehicle. Rather, seeking a writ of habeas corpus is the proper procedure to challenge unlawful confinement. *See* 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Such a habeas action becomes ripe for judicial consideration when a petitioner's credits equal the remainder of their sentence. *See Moore v. Rardin*, No. 22-CV-2476 (NEB/TNL), 2022 WL 18542331, at *6 (D. Minn. Dec. 1, 2022), *R. & R. adopted*, No. 22-CV-2476 (NEB/TNL), 2023 WL 1451560 (D. Minn. Feb. 1, 2023).

[4] Relatedly, Mr. Reed also contends that the BOP has misclassified him as an active gang member which has impacted the BOP facilities in which he can reside—and potentially his eligibility for halfway house or home confinement placement. (Def.'s Release Mot. at 1.) The Government disagrees, arguing that Mr. Reed is properly identified as an active member of a gang. (Gov't's Opp'n at 14.) The Court will not reach the merits of this dispute because it denies Mr. Reed's Release Motion on other grounds, namely, a failure to administratively exhaust his claim.

of 2007, *see* 18 U.S.C. § 3624(c)(1). For instance, amendments to the First Step Act made home confinement potentially available to low-risk prisoners:

> **Home confinement authority.**--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. *The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.*

*Id.* § 3624(c)(2) (First Step Act amendment in italics). As the statute provides, authority for the placement of prisoners rests with the BOP. (*Id.*) (stating, "The Bureau of Prisons shall, to the extent practicable . . . .").

While it is true that the First Step Act expanded release opportunities, courts have repeatedly observed that "it is [the] BOP—not the courts—who decides whether home detention is appropriate. As § 3624(c) contemplates, 'the authority . . . *may be used* . . . .' Rather than mandate any particular home confinement decision, Congress instead directed [the] BOP to place prisoners on home confinement 'to the extent practicable.'" *United States v. Yates*, No. 15-40063-01 (DDC), 2019 WL 1779773, at *4 (D. Kan. Apr. 23, 2019) (italics in original, citations omitted); *see also United States v. Kluge*, No. 17-CR-61 (DWF), 2020 WL 209287, at *3 (D. Minn. Jan. 14, 2020) ("Nothing in the statutes amended by the FSA permits the Court to place Defendant in home confinement. Under the FSA, the authority to place a prisoner remains with the BOP.") (citing 18 U.S.C. §§ 3624(c)(4), 3621(b); *United States v. Norris*, No. 17-CR-40(1) (FWF), 2019 WL 5079759, at *2 (E.D.N.C. Oct. 10, 2019)); *United States v. Burkhart*, No. 6:03-CR-03 (DCR), 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019) (stating that the First Step Act

10

"did not modify the requirement that the Bureau of Prisons, not the Court, make the decision to place a prisoner on home confinement or in a residential re-entry center.") (citing 18 U.S.C. § 3624(b)(1), (c)(1); *Heard v. Quintana*, 184 F. Supp. 3d 515, 520 (E.D. Ky. 2016)).

It is also well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement. *Khdeer v. Paul*, No. 18-CV-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018) ("Petitioner does not have a constitutionally protected liberty interest in serving his sentence at a particular institution.") (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996)), *R. & R. adopted*, 2019 WL 79318 (D. Minn. Jan. 2, 2019). Accordingly, the Court lacks jurisdiction to grant Mr. Reed's Motion as to his requested place of confinement.

### C. Section 3553 Factors

Finally, even if Mr. Reed had met his burden to show administrative exhaustion—which he has not—and then established that extraordinary and compelling reasons warranted his compassionate release—which he also has not—the Court would still have to consider the federal sentencing factors and public safety. *See* 18 U.S.C. § 3582(c)(1)(A); *see also Arafat*, 2021 WL 3721849, at *5 (quoting *White*, 2020 WL 2557077, at *4). The Court finds that the sentencing factors set forth in 18 U.S.C. § 3553(a) do not support a sentence reduction, nor is the Court confident that Mr. Reed will pose no danger to the community.

While it is true that Mr. Reed is nearing the end of his sentence, and although the Court is encouraged that he believes "a hard lesson has been taught[,]" (Def.'s Release Mot. at 2), and that he hopes to participate in "re-entry court to help establish [himself] back into the community [and] to ensure [he is] putting forth effort in being productive and law abiding[,]" (Def.'s Reconsideration Mot. at 3), the Court remains concerned. Mr. Reed has a lengthy criminal history, (Plea Agmt. ¶ 2), and his disciplinary record while serving his current sentence includes multiple incidents of violence, (Gov't's Ex. A to Gov't's Opp'n [Doc. No. 138-1] at 1–3.) Therefore, the Court agrees with the Government that none of the sentencing factors support a sentence reduction at this time.

### III. CONCLUSION

Accordingly, based on the foregoing and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Joshua Lamar Reed's pro se Motion for Compassionate Release from Custody [Doc. No. 134] is **DENIED WITH PREJUDICE**; and

2. Mr. Reed's pro se Motion to Reconsider Compassionate Release and Reconstrue Request [Doc. No. 139] is **GRANTED IN PART** and **DENIED IN PART** as set forth by this Memorandum Opinion and Order.

Dated: March 1, 2023         /s Susan Richard Nelson
                             SUSAN RICHARD NELSON
                             United States District Judge